UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BETTY NORMAN AND ALFRED                                        PLAINTIFFS
NORMAN

V.                                         CIVIL ACTION NO. 3:20-CV-418-DPJ-FKB

GEICO INSURANCE AND                                            DEFENDANTS
GEORGE'S PLACE, INC.

ORDER

Plaintiffs Betty and Alfred Norman sued Defendants GEICO Insurance and George's Place, Inc., claiming that Defendants collectively deprived them of uninsured/underinsured motorist benefits otherwise due under the Normans' GEICO auto policy.  The Court previously remanded the case to the County Court of Hinds County, Mississippi, finding that GEICO failed to establish the jurisdictional amount in controversy.  But after remand, Plaintiffs refused to admit that the amount in controversy did not exceed $75,000, so GEICO filed another notice of removal.  The Normans now seek a second remand.  The parties dispute the jurisdictional amount and whether diversity spoiler George's Place was improperly joined.  The Normans also seek sanctions and have asked for an emergency hearing.  For the following reasons, the Normans' motions [2, 4] are denied, and the claims against George's Place are dismissed without prejudice.

I.      Facts and Procedural History

According to the Complaint, a hit-and-run driver sideswiped Plaintiff Betty Norman's vehicle on July 31, 2019, in Hinds County, Mississippi.  Compl. [1-2] at 1.  After the accident, the Normans made an insurance claim with GEICO, their automobile-insurance provider.  *Id.* at 5. GEICO denied the Normans' claim for uninsured-motorist bodily-injury (UMBI) coverage,

claiming that Alfred Norman declined that coverage eleven years earlier. With the denial letter, GEICO sent the Normans a copy of the October 24, 2008 declination bearing Alfred's electronic signature above the selection, "Do not include Uninsured Motorist coverage in my policy." *Id.* at 9 (UMBI Waiver). GEICO also provided a copy of the applicable declarations page for the subject policy allegedly confirming that the Normans had no UMBI coverage:

```
Uninsured Motorists Bodily Injury
Each Person/Each Occurrence          Insured Rejects
Property Damage                      Insured Rejects
```

*Id.* at 8 (2019 Dec. Page).

The Normans acknowledge these documents but say Alfred's "electronic signature was fraudulently signed to" the waiver by George's Place, a Mississippi dealership that allegedly sold the Normans several vehicles. *Id.* at 1. They also cite another form—also dated October 24, 2008—bearing Alfred's electronic signature that elected UMBI coverage. *Id.* at 12 (UMBI Coverage Selection).

On these facts, the Normans sued GEICO and George's Place in state court on October 30, 2019. They asserted eight state-law tort claims, generally faulting George's Place for fraudulently forging Alfred's signature on the UMBI Waiver, which they assert caused GEICO's erroneous decision to deny their UMBI claim. The Normans further assert that GEICO is vicariously liable for the fraudulent signature and that it negligently hired and/or supervised George's Place and others. *Id.* at 2–3.

The Normans are Mississippi residents. George's Place is a Mississippi corporation and therefore a diversity spoiler when joined as a defendant with GEICO, a Maryland corporation. *See* Notice of Removal [1] ¶ 18. GEICO initially removed the case to this Court arguing that Plaintiffs improperly joined, or misjoined, George's Place. Although these arguments were

potentially meritorious, the Court declined to address them when ruling on the first motion to remand because GEICO failed to show that the amount-in-controversy requirement had been satisfied. *See Norman v. GEICO Ins.*, No. 3:19-CV-872-DPJ-LRA, Order [46] (S.D. Miss. Apr. 14, 2020) ("*Norman I* Order").

Upon remand, GEICO immediately attempted to remedy that defect by propounding written discovery. In its earlier remand order, the Court warned the Normans of this possibility, observing that the

> case [could] again find[] its way to federal court . . . if GEICO develops evidence through discovery that the Normans are indeed seeking more than the jurisdictional floor. If the Normans want to remain in state court, they should keep their claim below $75,000 and avoid gamesmanship if presented with discovery requests addressing the amount in controversy. Though not universally true, courts have held that "a plaintiff's refusal to admit or stipulate that she will not accept more than $75,000 in damages is sufficient proof that the jurisdictional amount exceeds $75,000." *Sprayberry v. Hardee's Food Sys., Inc.*, No. 2:06-CV-209-P-A, 2007 WL 2159305, at *2 (N.D. Miss. July 26, 2007).

*Id.* at 7 n.2 (citation omitted). The Normans did not heed that advice:

> **REQUEST FOR ADMISSION NO. 1:** Please admit that the [sic] you are not seeking damages exceeding $75,000, exclusive of interest and costs, in this lawsuit.
>
> **RESPONSE NO. 1:** Plaintiff cannot reasonably admit nor deny this response at this time, discovery has not expired.
>
> **REQUEST FOR ADMISSION NO. 2:** Please admit that you will not, after the expiration of one year from the date upon which GEICO was served with process in this lawsuit, move to amend your Complaint to seek damages in excess of $75,000, exclusive of interest and costs.
>
> **RESPONSE NO. 2:** Deny

Pls.' Resps. to Reqs. for Admis. [1-7] at 1.

Armed with this new evidence, GEICO did exactly what the Court predicted and filed a second notice of removal on June 23, 2020. The Normans swiftly sought remand. They also sought sanctions because GEICO "disobeyed the order by the court that established on February 25, 2010 [Doc. 41] where this matter had already been adjudicated with clear explanations from this honorable court as to the jurisdictional authority of this court, pursuant to 5th Circuit case law that this court provided in its order (sic)." Pls.' Mot. to Remand [3] at 3.

II.     Standard

As before, GEICO asserts that diversity jurisdiction exists under 28 U.S.C. § 1332(a)(1), which states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity jurisdiction requires complete diversity between all named plaintiffs and all named defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal district court. "To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied," including complete diversity. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc). A district court may, however, "ignore[] a lack of complete diversity where the plaintiff joins a nondiverse defendant to avoid federal jurisdiction." *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 401 n.14 (5th Cir. 2013).

III.     Analysis

There are two primary issues: whether the amount in controversy exceeds the statutory minimum and whether George's Place is properly joined. The Court will address each in turn.

A.     Amount in Controversy

Generally, the damages sought in the complaint constitute the amount in controversy, so long as the pleading was made in good faith. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Plaintiffs premise their motion to remand on this threshold legal statement, contending "that either the federal district court will follow the law, or ignore the same." Pls.' Mem. [3] at 4. But there is far more to the analysis, as explained in the Court's previous remand order. *See Norman I* Order at 4–5.

When, as here, "the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds" the jurisdictional amount. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). The removing party can meet this burden in one of two ways: (1) by showing that it is "facially apparent" that the claim exceeds $75,000, or (2) if the value is not "facially apparent," by "setting forth the facts in controversy . . . that support a finding of the requisite amount." *Allen*, 63 F.3d at 1335.

If GEICO "shows by a preponderance of the evidence that the amount in controversy exceeds $75,000, removal is proper unless the plaintiff shows that 'it is legally certain that his recovery will not exceed the'" jurisdictional amount. *Knowles Pub. v. Am. Motorists Ins. Co.*, No. 00-10561, 2001 WL 85914, at *2 (5th Cir. Jan. 25, 2001) (quoting *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411–12 (5th Cir. 1995)). GEICO says it has met its burden in three ways: (1) the

Normans refused to stipulate that they would not accept more than $75,000; (2) they assert bad faith; and (3) they seek punitive damages.

For their part, the Normans merely say "that without full discovery, it is impossible to determine what the amount of damages will be, even though Plaintiff[s] do[] seek punitive damages." Pls.' Mem. [3] at 4; *see* Pls.' Rebuttal [8] at 3 ("Plaintiff[s] still ha[ve] not determined their total damages, especially since this delay has caused further damages.").

At this point, that is not enough to dodge removal. As the Court cautioned in its previous remand order, the Normans could have avoided a second removal had they stipulated that they would not accept more than $75,000 in this lawsuit. *See Draper v. U.S. Fid. & Guar. Co.*, No. 3:00-CV-70-B-N, 2000 WL 268565, at * 3 (S.D. Miss. Mar. 8, 2000) ("Plaintiff could have remained in state court with a straight-forward response to the request for admission."). Their failure to do so—coupled with their bad faith claims and demand for punitive damages—show by a preponderance of the evidence that the amount in controversy exceeded $75,000 at the time of the second removal. Finally, the Normans have not attempted to demonstrate that "it is legally certain that [their] recovery will not exceed the" jurisdictional amount. *Knowles*, 2001 WL 85914, at *2 (quoting *De Aguilar*, 47 F.3d at 1411–12). On the record before it, the Court finds the amount-in-controversy requirement satisfied.

B. Complete Diversity

While GEICO asserts both improper joinder and improper misjoinder to establish complete diversity, it does little more than pay lip service to the latter test under Rule 20. *See* Def.'s Mem. [6] at 11 (arguing the misjoinder doctrine applies solely "[b]ecause Plaintiffs have joined claims against George's Place with claims against GEICO, but other claims against

GEICO exist independent of Plaintiffs' claims against George's Place").  Because GEICO instead focuses primarily on improper joinder, the Court does the same.

The improper-joinder rule "is a narrow exception to the rule that diversity jurisdiction requires complete diversity." *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  To that end, "[t]he burden is on the removing party; and the burden of demonstrating improper joinder is a heavy one." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).  Indeed, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiffs'] favor." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).

The test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.  To predict whether a plaintiff has a reasonable basis for recovery, a "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.*  When doing so, the federal version of Rule 12(b)(6) applies. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016).

There is, however, a caveat to this rule.  When "a plaintiff has stated a claim[] but has misstated or omitted discrete facts that would determine the propriety of joinder," a "district court may, in its discretion pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.

GEICO says the Normans did just that and asks the Court to pierce the pleadings under *Smallwood*.  As GEICO notes, the Normans averred in their Complaint that George's Place

7

fraudulently attached Alfred's signature to the UMBI Waiver on "October 24, 2008." Compl. [1-2] at 5. Yet George's Place first sold a car to the Normans in 2010. GEICO offers ample evidence. To begin, George's Place responded to the Normans' interrogatories by stating that its "records show that the first vehicle sold to Plaintiffs was on March 16, 2010." George's Place's Resps. to Pls.' First Set of Interrogs. [1-8] at 4. GEICO attached those records. *See* Records [1-10, 1-11]. George's Place also swore that it had "no involvement with procuring insurance other than requiring lienholder coverage and receipt of the proof of insurance." George's Place's Resps. to Pls.' First Set of Interrogs. [1-8] at 5. George's Place then denied that it "signed Plaintiff's name to the insurance document in question." George's Place's Resps. to Pls.' Reqs. for Admissions [1-9] at 2.

Plaintiffs say these facts must be argued in state court because neither the "Fifth Circuit[] nor the United States Supreme Court allows a district court to create jurisdiction based on an argument regarding material facts." Pls.' Reply [8] at 3. Because the Fifth Circuit does allow pleading piercing, the Court assumes Plaintiffs are arguing that it is not appropriate here. But GEICO offers more than mere argument—it offers record evidence. And the asserted facts regarding George's Place are precisely the type that trigger summary review. In *Smallwood*, the Fifth Circuit offered examples of "misstated or omitted discrete facts" that allow courts to pierce the pleadings. 385 F.3d 573. The list included the following: "the in-state doctor defendant did not treat the patient plaintiff[ and] the in-state pharmacist defendant did not fill a prescription for the plaintiff patient." *Id.* at 574 n.12. GEICO says George's Place did not process the insurance forms.

GEICO has identified discrete misstatements or omissions that allow the Court to "pierce the pleadings and conduct a summary inquiry." *Id.* at 573. Under that inquiry, the Court may

8

"consider summary-judgment type evidence" like the evidence GEICO has produced. *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 766 (5th Cir. 2016). That does not, however, mean that Plaintiffs must offer rebuttal evidence. *Id.* "Instead, the evidence that is dispositive on the *Smallwood* inquiry are the facts that could be easily disproved if not true." *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220–21 (5th Cir. 2018).

Here, the Normans offer only two relevant records to support remand: (1) a document reflecting the 2008 UMBI Waiver [2-2] and (2) the March 16, 2010 Buyers Order/Bill of Sale from George's Place [2-1]. Although those documents seemingly eliminate George's Place as the potential source of the alleged forged signature, the Normans believe they demonstrate that something foul was afoot:

> if the "**BUYERS ORDER**" (the Defendant Georges Place Inc. provided this document from his discovery responses propounded upon it by Plaintiff), clearly shows that Plaintiff allegedly "**BOUGHT**" the the truck . . . then how is it possible to have INSURED A VEHICLE 2 years **BEFORE** you actually bought the vehicle, thats not reasonably possible nor plausible. Therefore, Plaintiff avers that the conspiracy is present in the fraudulent documentation provided by the State actor, George Place and GEICO INSURANCE. (sic)

Pls.' Mem. [3] at 2; *see* Records [1-10] at 1; Compl. [1-2] at 8 (2019 Dec. Page); *id.* at 9 (UMBI Waiver).

This argument is a little hard to follow. As stated, the Normans pleaded in their Complaint that the UMBI Waiver was fraudulently signed in October 2008. *See* Compl. [1-2] at 5. All record evidence supports that date. So perhaps the Normans suggest that the 2010 date on the Buyer's Order is incorrect. If that is their point, then it would be easy to prove. *See Cumpian*, 910 F.3d at 220–21. For example, they could simply produce the title to the vehicle, their own copies of the bill of sale, the vehicle registration from 2008, insurance records, tax records, or even their own affidavits. The same evidence could easily disprove GEICO's records showing that in 2010, the Normans added the first vehicle purchased from George's Place to

their previously existing GEICO policy.  *See* Dec. Page [5-2] (adding vehicle effective March 17, 2010).  Instead, the Normans merely speculate that the records somehow demonstrate a conspiracy of sort.

Moreover, GEICO's record evidence shows how insurance could exist before the Normans purchased the subject vehicle from George's Place in 2010.  In its sworn interrogatory responses, George's Place explained that when it sold the Normans vehicles, the vehicles were added to the already existing GEICO Policy.  George's Place's Resps. to Pls.' First Set of Interrogs. [1-8] at 5.  Consistent with that, GEICO offers unrebutted evidence that the policy was effective in 2008.  *See, e.g.*, Online Application [1-7].  It has also produced the declarations page showing that a vehicle purchased from George's Place was added to an existing policy—with three previously insured vehicles—effective March 17, 2010.  Dec. Page [5-2].  All of which explains how GEICO could have insurance in place before the 2010 purchase.

Again, there must be a "*reasonable* basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Smallwood*, 385 F.3d at 573 (emphasis added).  Rank speculation aside, the record shows no such basis.  Nothing suggests an earlier purchase from George's Place or that it was involved in the 2008 UMBI Waiver whatsoever.  Even assuming someone forged Alfred's signature on that waiver, GEICO has produced unrebutted evidence refuting the factual basis for the Normans' claims against George's Place.

As such, the Normans have no possibility of recovery on their claims against George's Place, which was improperly joined to defeat diversity jurisdiction.  The claims against George's Place will be dismissed without prejudice.  *See Int'l Energy*, 818 F.3d at 209 ("When, as here, a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice.").  The Court has subject-matter jurisdiction over the

Normans' claims against GEICO.  And because the Court denies the motion to remand, there is no basis for an award of sanctions against the removing party or its attorney.  *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").[1]

IV.     Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.[2]  For the foregoing reasons, Plaintiffs' Motion to Remand and for Sanctions [2] and Emergency Motion for Emergency Hearing [4] are denied.  The claims against George's Place are dismissed without prejudice.  The remaining parties are directed to contact the chambers of United States Magistrate Judge F. Keith Ball within 10 days of the entry of this Order to set the case for a telephone case-management conference.

**SO ORDERED AND ADJUDGED** this the 17th day of August, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Plaintiffs filed a motion for an emergency hearing.  *See* Pls.' Mot. [4].  That motion did not seek an evidentiary hearing.  Instead, Plaintiffs argued that the motion to remand should be immediately heard "to stop the irreparable harm" that removal to federal court has "inflicted upon [Mrs. Norman's] health."  *Id.* at 2.  In other words, Plaintiffs sought a quick hearing date so the Court would decide this jurisdictional question as soon as possible.  The Court has rendered an expedited ruling, and there is no need for additional argument.

[2] As just one example, the Normans contend in their reply that removal was procedurally defective because George's Place did not join in it.  *See* Pls.' Reply [8] at 2.  But "a removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined."  *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007).